THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| JENNIFER HANSEN, | ) | Case No. 2:07CV00379 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.   INTRODUCTION

Plaintiff Jennifer Hansen filed an application for Social Security benefits alleging a disability beginning on July 31, 2002, due to a learning disability and a generalized anxiety disorder. After a hearing, an administrative law judge ("ALJ") concluded at step four of the five-part sequential evaluation process, *see* 20 C.F.R. § 416.920, *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), that Plaintiff was not disabled because she could perform her past relevant work as a fast food cook.  In the alternative, the ALJ found that with her residual functional capacity, age, educations, and work experience, Plaintiff could perform other jobs existing in significant numbers in the national economy. Her request for review was denied by the Appeals Council. She now seeks judicial review of the decision of the Commissioner of Social Security denying her claim for benefits.

Plaintiff contends that the ALJ erred in that: (1) she improperly rejected the opinions of Plaintiff's treating physician and her therapist; (2) the ALJ failed to properly weigh Plaintiff's testimony and her mother's statement;  and, (3) the ALJ's findings at step 4 and 5 are erroneous because they are based on testimony of a vocational expert in response to an incomplete hypothetical question that failed to include all her limitations.

## II.  STANDARD OF REVIEW

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if she applied the correct legal standards.  *Goatcher v. United States Dep't of Health & Human Servs*., 52 F.3d 288, 289 (10ᵗʰ Cir. 1995). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted).  The Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  *Kelley v. Chater*, 62 F.3d 335, 337 (10ᵗʰ Cir. 1995).

### III.  DISCUSSION

### A. Treating Physician's Opinions

The Court rejects Plaintiff's first claim that the ALJ improperly discounted the opinions of Dr. Strong, her treating physician of many years, as well as that of Carolyn Chudley, LCSW, her treating therapist.

Plaintiff asserts that the ALJ failed to give specific, legitimate reasons for rejecting the opinions of her treating physician, Dr. Strong.  She asserts that Dr. Strong's assessment is well-supported by her treatment notes, and disputes that Dr. Strong's "treating notes do not establish any significant time period where [Plaintiff] was doing well enough to sustain employment in the competitive labor market".  Mem. Supp. p. 17. Specifically, Plaintiff complains that the ALJ failed to consider Dr. Strong's notations that some of Plaintiff's days are worse than others.

The ALJ must give substantial weight to the evidence and opinions of the claimant's treating physicians unless good cause is shown for finding to the contrary.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)("ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record"). A treating physician's opinion may be rejected if it is not "well

supported by clinical and laboratory diagnostic techniques" and if inconsistent with other substantial evidence of record. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

Dr. Strong, Plaintiff's treating physician, opined that Plaintiff was unable to return to full time employment because "[s]he has an anxiety disorder with panic attacks and somatization, agoraphobia, and paranoia." (Tr. 556). The record reflects that although the ALJ considered the opinion of Dr. Strong, for a number of specifically cited reasons she, nevertheless, discounted Dr. Strong's opinion as inconsistent with her chart notes and with other medical evidence of record. (Tr.22-23).

For example, the record reasonably can be viewed as supporting the ALJ's conclusion that Dr. Strong's opinion, that Plaintiff had marked limitations in her work-related functions, was inconsistent with her office treatment notes. As asserted by the Commissioner, aside from a few exacerbations those notes reasonably can be viewed as showing that Plaintiff's mental complaints were controlled by medication from January 2001 through November 2004. (*See e.g.* Tr. 285, 270, 267, 522, 550, 549, 548).

Similarly, the ALJ's finding, (Tr. 22), that Dr. Strong's description of catastrophic mental limitations was inconsistent with the physician's encouragement of Plaintiff to seek employment in June 2002, (Tr. 269), is supported by the evidence of record.

*See e.g., Castellano*, 26 F.3d at 1029(claimant's pursuit of a plan of vocation rehabilitation on his doctor's advice a reason to reject treating physician's opinion that claimant was totally disabled).

The record further reflects that the five office notes immediately preceding Dr. Strong's completion of the "disability form", reveal that Plaintiff had a "great" mood, and had no mental status abnormalities in December 2003 (Tr. 522), had "much improved" depression, "great" affect, and no mental status abnormalities in July 2004 (Tr. 549), had good mood and no mental status abnormalities in November 2004 (Tr. 548), and had no mental status abnormalities in January 2005 (Tr. 547).  Psychotropic medications were decreased in July 2004 (Tr. 549) and November 2004 Tr. 548).

Finally, the Court can find no error because the ALJ discounted the opinion of Dr. Strong due to the fact that she is a family physician, rather than a specialist in psychiatry or psychology (Tr. 22).  *See* 20 C.F.R. § 404.1527(d)(5)(greater weight generally given to the opinion of a specialist); *Goatcher v. United States Dep't of Health & Human Serv.*, 52 F.3d 288, 290 (10th Cir. 1995(citing 20 C.F.R. § 404.1527(d)(2)-(6) factors with approval). The ALJ reasonably could conclude from the record evidence that Dr. Strong's opinion was also contradicted by the opinion of Dr. Nielson, a psychologist who examined and tested Plaintiff twice

(Tr. 343-46, 512-15), as well as the opinions of Dr. Egan (Tr. 456-75, 524-43) and Dr. Berkowitz (Tr. 516-19), two state agency psychological consultants.

In summary the Court concludes that the record, when considered in its entirety as the ALJ states she did, sets forth substantial evidence from which the ALJ reasonably could have reached her conclusion and which supports her reasons for discounting Dr. Strong's opinion. Thus, the ALJ provided specific legitimate reasons for the weight she accorded Dr. Strong's opinion.

Substantial record evidence also reasonably can be viewed as supporting the ALJ's conclusion that he considered but discounted the observations of Plaintiff's treating therapist, Carolyn Chudley, LCSW.  Although, Plaintiff asserts that  the ALJ simply shrugged off the observations of her therapist, the record reflects that the ALJ found them internally inconsistent and that no opinion precluding all work activity was given.  In that regard the ALJ stated: "While Ms. Chudley's report stated that the claimant was anxious and had problems with being socially inept, the assessment also stated the claimant was able to take care of her own personal needs, interact with friends and family and participate in the Star Trek club.  It is also noted that Ms. Chudley did not preclude work activity ...". (Tr. 22).  It further appears that, like Dr.

Strong's opinion, the ALJ found Ms. Chudley's observations inconsistent with other medical evidence of record.  (Tr. 22-23).

### B.  Evaluation of Plaintiff's Credibility and her Mother's Statement.

Plaintiff next contends that the ALJ failed to provide adequate reasons for rejecting her subjective complaints and the lay witness statement of her mother. Specifically, Plaintiff asserts that she "does not allege that her impairments preclude 'all work activity'[as]... she functions rather well in the protective confines of her own home but that she cannot tolerate the stress associated with a normal work setting in the competitive labor market." Mem. Supp. p.19 (emphasis omitted).  Plaintiff, therefore, urges that her "ability to cook, clean and take care of her personal needs is not in any way inconsistent with her allegation that she is unable to handle the stress of sustained competitive employment."  *Id*.

"'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  The ALJ was not required to set forth "a formalistic factor-by-factor recitation of the evidence" she relied on in evaluating Plaintiff's credibility.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

"So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility", the credibility determination is adequate. *Id*. If the ALJ disbelieved claimant's allegations, she must explain what evidence led her to conclude the claimant's allegations were not credible. *Kepler v. Chater*, 68 F. 3d. 387, 391 (10th Cir. 1995).

The Court concludes that the ALJ fulfilled the above obligation. The record reflects that the ALJ considered Plaintiff's daily activities and concluded that she "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations". (Tr. 21). Activities the ALJ considered included hanging out with friends (Tr.80, 129), visiting with family members both in and out of the home (Tr. 129), preparing meals, taking care of personal needs (Tr. 81, 128), straightening the house, scrap booking (Tr. 128), walking every evening (Tr. 129), handling her own money (Tr. 82, 129), reading (Tr. 86-87), washing dishes, doing laundry, occasionally going to a movie (Tr. 87), and shopping with family members (Tr. 88).

The record further reflects that the ALJ also considered that Plaintiff was not always compliant with her treatment. (Tr. 22). *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)(in evaluating credibility ALJ may consider what attempts a claimant made to relieve his symptoms, including whether he took prescribed

medication).  Plaintiff was inconsistent in taking her psychotropic medication in March 2001. (Tr. 281).  Her cessation of medication corresponded with her filing of applications for Social Security disability benefits and after one to three years of use.  Dr. Strong noted: "She stopped her Serzone and Wellbutrin because after three years on Serzone and about one year on Wellbutrin they started 'making me sick about an hour after I took them.'  It is unclear whether this has improved without them and she has been off them for more than a month."  (Tr. 268).

The ALJ also cited several instances of record which she viewed as suggesting that Plaintiff exaggerated her complaints. (Tr. 22).  Pulmonary function studies, an objective medical test of breathing capacity, demonstrated Plaintiff's lack of effort on testing in June and July 2002.  (Tr. 257, 259, 262, 373). Emergency medical services personnel believed that, during one of Plaintiff's alleged syncopal episodes, Plaintiff was deliberately not responding to questions when she was able to respond to painful stimuli and an ammonia ampule. (Tr. 504).  Dr. Strong noted that Plaintiff's cough lessened when distracted and that her facial expression and agitated breathing returned to normal when distracted.  (Tr. 268, 270).

Although Plaintiff asserts that she was fired from her last employment due to her impairments, the record reasonably can be viewed as ambiguous, and the ALJ so found.  (Tr. 22; See also Tr.

578-579, 268).    Additionally,  the  ALJ  also  cited  Plaintiff's
failure  to  receive  recommended  psychiatric  treatment  as  an
additional  reason  to  doubt  her  credibility.    (Tr.  21-22).  *See*
*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)(frequency of
medical  contacts  and  extensiveness  of  the  attempts,  medical  or
nonmedical,  to  obtain  relief  may  be  considered  in  evaluating
credibility); *Qualls*, 206 F.3d at 1372(claimant's failure to follow
prescribed  medical  treatment  may  be  considered  in  evaluating  the
credibility  of  subjective  complaints).  Although  Plaintiff  claimed
that  she  could  not  afford  the  psychiatric  treatment  recommended  by
Dr.  Strong,  the  ALJ  observed  "the  record  showed  that  her  parents
have  paid  for  visits  to  the  emergency  room  as  well  as  regular
visits  to  Dr.  Strong,  making  the  argument  that  psychiatric
treatment  has  not  been  sought  due  to  a  lack  of  funds  unpersuasive."
(Tr. 22).

The  ALJ  similarly  considered  and  rejected  the  written
statement  from  Plaintiff's  Mother  because  the  degree  of  limitation
described  was  inconsistent  with  Plaintiff's  daily  activities  and
for  Plaintiff's  failure  to  pursue  psychiatric  treatment  recommended
by  her  treating  physician. (Tr. 22).

Plaintiff  also  asserts  that  the  ALJ's  finding  that  her
capability  to  attend  to  her  personal  and  domestic  needs  is
inconsistent  with  her  ability  to  interact  in  the  work  place  and,
therefore,  to  maintain  employment.    As  Plaintiff  suggests,  the

10

evidence reflects that she has difficulty with interpersonal relationships, aside from her family and a select few friends. Although the ALJ acknowledged Plaintiff's limitations, she concluded that those limitations did not preclude all work activity.  In her alternative finding at step 5 the ALJ specifically found that Plaintiff could perform other jobs such as small parts assembler, medical assembler-plastics, and laundry folder which appear to require little interpersonal capability. (Tr. 24).

In sum, the Court finds nothing amounting to legal error in the ALJ's evaluation of Plaintiff's credibility or in the evaluation of her Mother's Statement.


### C.  Vocational Expert Testimony.

The Court also rejects Plaintiff's final contention that the ALJ's findings at steps four and five are flawed because they are based on testimony of a vocational expert solicited in response to an incomplete hypothetical question.  The hypothetical, Plaintiff asserts, "did not account for any of the limitations identified by the claimant's treating sources, the lay witnesses, or the claimant's own testimony." Mem. Supp. p. 24.

The ALJ was not required to include in the hypothetical question those limitations of Plaintiff not substantiated in the record.  *See Decker v. Charter,* 86 F.3d 953, 955 (10th Cir.

11

1996)(hypothetical questions "need only reflect impairments and limitations that are borne out by the evidentiary record").  The limitations identified by Plaintiff and her Mother were found not to be totally credible and the opinion of Dr. Strong appears to have been given little weight.


## IV.  CONCLUSION

Because, the record contains substantial evidence from which the Commissioner reasonably could conclude that Plaintiff was not disabled within the meaning of the Social Security Act, and for the forgoing reasons, the decision of the Commissioner as to the Plaintiff Jennifer Hansen is affirmed.

DATED this 6th day of May, 2008.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT